Good morning, Your Honors. My name is Will Gilbert and I'm here representing Arlene Hein and the estate of her late husband, Bill Hein. May it please the Court, I'd like to reserve two minutes of my time for rebuttal and this will help. The claims in this case revolve around accreted land on the Yellowstone River. My folks are farmers and they purchased what were originally patented lots, which have riparian borders. The inland borders are fixed and set borders. The riverside were originally marked with a meander line, which was roughly designated where the extent of usable, farmable land was so that farmers, when they were purchasing this land, would have an idea of what they were really buying. However, that wasn't the extent of their property. They owned to the ordinary high water mark. What the meander line is? It's not the center of the stream, it's the high water mark? No, it's a mark in the lot itself before the high water mark, which indicates where the end of usable, farmable land was. You mean upstream or uphill from the high water mark or downhill from the high water mark? Recognizing that there generally is some rough land closer to the ordinary high water mark that you cannot use. However, the deed itself clearly provided that their property extended to the ordinary high water mark. And the Yellowstone River being the... The patent said it was riparian land and... Yes, and it's cited in the record to this US survey manual as to what the meander line means and how it's used, and that they really do own to the ordinary high water mark. So that it's consistent with a movable river, it's a boundary that changes. The Yellowstone River is an undammed river and has great movement within its valley. But some of your claims here relate to land between the high water mark and the low water mark. Yes, they do, Your Honor. And the reason that is, is that under Montana law, there is a provision under Montana law on navigable rivers that the state of Montana, who received the bed of at least most of navigable rivers on the Equal Footing Doctrine, have ceded to the ordinary high water mark and the low water mark for the purpose of feeding cattle, to be honest. But, I mean, generally speaking here, is there any question that the government claimed an interest in the Yellowstone River from the mid-channel in both the 1904 and 1958 Acts of Congress? Well, we do and we have pled both of the claims separately. Each count, we've counted for each law, we've made an asserted account to the high water mark and for a second count from the high water mark to the low water mark. I understand that. And part of the issue here is that the district court seems to have packaged all the claims together. I agree. The district court seems to have thrown the baby out with the bathwater. It's our position that certainly at the very least, the claims are not barred by the QTA's 12-year statute of limitations. There's nothing about... Why is that? So it seemed to me that the magistrate judge, whose recommendation was adopted then by the district court, had the notion that you needed to point to something that happened since 2002 to show why this claim isn't time-barred. And the magistrate judge thought you had not done that. And I don't really see anything in your brief now that does that. So I don't understand how we can think that something happened since 2002 that keeps your claims alive on any of the claims. Well, Your Honor, I think that the distinction lies as to the accreted land and the notice provided by the statutory language about the middle of the channel. And particularly in the Fidelity Explorer case, which talks about that on the... So what happened since 2002 on the accreted land? The accreted land has accreted over time. Right, but it was already accreting before 2002. Yes. So is your idea that you get a new statute of limitations every time a grain of sand attaches? Well, no. Our theory, Your Honor, is that there's nothing about the United States claim to own the riverbed that is adverse to my clients gaining possession of land as it accretes. But if the United States asserted a claim to the riverbed, wouldn't they own any islands in the riverbed? They would own islands if the islands formed, depending on the interpretation of the equal footing, and whether they formed in the south or southern half of the river or the northern half of the river. If the islands originally formed in the northern half of the river, and we've cited to the record where some of the maps seem to indicate that they did, those belong to the state of Montana and not the United States. The United States doesn't have a reasonable claim to those. But why did you sue the United States? Why did we sue? They were our predecessor in title. Under Montana law, when you bring a quiet title act, you are required to bring it against any possible person. But so what changed since 2002 as to, I mean, so you're suing the United States for some reason, and I can't understand what changed since 2002. And if nothing changed since 2002, then it seems like it's time-barred. Well, some of what has happened is the increased pressure of recreation on the river and the advent of GPS. And what does that have to do with the United States? Folks have now, hunters and fishers, have pre-programmed maps that designate to them where it says they feel at least they are free to go and what is public land and not public land. And these are often in error, and it's causing increasing conflict between landowners and recreationists as to where, what is public land and is not. Under Montana law, we have a stream access law that on navigable rivers, recreationalists are allowed to access from the low-water mark to the ordinary high-water mark, which creates some conflicts initially anyway because where that is. And also if there's some view that some of this may or may not be public land. But in your view, if it's public land, it's state land, right? Yes. So how did that change as to the United States? Well, we understand that the United States has that claim out there. And you knew that in 2002 also, right? A reasonable person may have known that, but not to the accreted land. Once land accretes, it's no longer part of the riverbed. And Montana law is clear that land that accretes belongs to the riparian landowner. And the United States has done nothing to provide any type of specific notice that, yo, that accreted land is ours. They've made... So under common law, and it's been so since medieval England, isn't it? Yes. Once you're riparian, you own the accretions, or otherwise you don't remain a riparian landowner. Right. The river giveth and the river taketh away. And that's been cited by the United States Supreme Court as part of federal law, and also it is Montana statutory law. But I don't understand how that makes your claim timely. That might be why you should win it or something, but I'm not even sure the United States is the right defendant. Can you explain again why you think that makes the claim timely? Yes, because we are not, there's been no notice that the United States is claiming an interest, an adverse interest, in this accreted land. I guess if the United States had never claimed an interest in the accreted land, then your claim would be timely forever. There wouldn't be any commencement that you had to sue within 12 years of. But now that this litigation has begun, they have asserted a claim to it. So your 12 years would run from the assertion. Yes. I remember in Schultz we said that putting up a gatehouse and a gate and guards to keep people out of army land wasn't enough to put somebody on notice that the feds were claiming land. Yeah. What did the feds do exactly to claim the land and when? Actually we filed this litigation and we were hoping that we were going to get a notice of claim to quiet title, whether it's in federal court against the feds or in state court against all who may have an interest and nobody shows up. Yes, your honor. You just get a default and you win. Right, and in this interest with the United States potentially being a party, we couldn't have filed it in state court and sought full relief. But it's just like that, you're not asserting that, you don't have to assert any claim of an interest that's adverse to yours. You're saying there may be? That's what we did assert, yes. Certainly there is a claim now that it is adverse, but there wasn't beforehand as to the secreted land. You know, this is different for instance in the Fidelity Explorer case where there was a lease for the riverbed. And the riverbed itself was what was being adjudicated. Who owned that? We're not trying to say that we owned the riverbed. My clients are 30 year old, 30 years of ranchers and farmers. And we're talking about accreted land. Yes. And the issue is will they be able to water their cattle without? Whether they can water the cattle. Yes, and we understand that there may be an argument as to the, between the high water mark and the low water mark, that a little different beast than the accreted land. But we feel very that they are, that they have ownership of that. Where in the record could we find an inventory of the accreted lands? Is there, is it there? As to the accreted lands? Yes. There is in the initial complaint, there are, in the amended complaint, there are maps which list those lands. Are there any good maps? I looked at the maps and they're just black and white reproductions of small maps. I couldn't lend themselves to electric, electronic filing that certainly could be provided. Are they somewhere? Are they in the district court? Where are those? They, they hopefully were part of the original district court record. But you don't know if they were? My understanding is they were, but I've not personally looked at it. Excuse me? I'm sure you've read the record. I have read the record, yes, but I've again looked at it as black and white, whether they're, the color ones exist in the record, I do not know. I know when it was originally filed, they were color. Originally filed, meaning originally filed in the district court? Yes. Are, are any of the accretions attached to the riverbank? Yes, yes, they are. So not all of them? The government makes the argument that accretions are attached to islands. Yes, there are. That says another complicating factor in this case is that accretions that have accreted to the, the riverbank have, and accretions that have accreted to these islands have met. And depending on your view of, of how far that is, there's a dispute there, which is again, wasn't known before that. But certainly, I, I don't think that you can throw out all the whole claim when it's, some of that is indeed accreted to the riverbed and there's never been any notice. Help me on the, on the islands. The idea of accretion law for many centuries has been that if you're a riparian landowner, the riparian characteristic of the land is very important to its economic value and the use that can be made of it. Rivers go down and rivers change course. There must be a whole mountain of case law about what happens when the river goes down and an island rises and also the bank accretes land and they meet. That's not uncommon. Yes, and under Montana law, when a, when an island arises, it belongs to whoever that has the, owns the riverbed. In this case, that becomes. The riverbed would be the state under the. Equal footing. Statehood Act and the equal footing. Yes, or if it, even if you don't believe, if you believe the southern half was reserved, there are maps and evidence that indicate it arose in the northern half. Tribal land might be reserved. Yeah, but there is indication that this, these islands arose in the northern half of the Yellowstone. Is that the Crow side? That's the state side. The state side? Yes. The United States government is claiming they had reserved the southern side. And what Montana law says is that, you know, the owner of the riverbed owns these islands and lands that accrete to it. When the two join, it, you've got to find where that line is of the, the break between the accretions that were attached to the land and those that were attached to the island. In our case, we haven't asserted where that exact line is. So the law is not that the riparian owner gets the island, but that you have to figure out some line? Yes, it is. In our case, we've not asserted where that line is because it's our belief that the United States doesn't own the islands in the first place. You said you couldn't sue the United States in state court. Maybe there's an obvious reason, but can you just explain what it is? Well, I guess that's a presumption that the United States would not consent to... Because they might consent, right? I mean, they might decide, let's figure this out. Well, they could, and we were under the same hope that the state of Montana would consent to having this argued in federal court. And we were unfortunately surprised that they did not. It's certainly, there's no forum where we can compel both the other problem with that is, is that if we have to wait for those... So, you'll be quieting title against the U.S. here, and quieting title against Montana in a subsequent action in state court? Yes, yes. And the problem is, if we, if we has been suggested, we wait around for those two sovereigns to eventually get around to litigating that, and the United States wins, well, our 12 years may well have been gone, and there's no provision for tolling. That assumes that your 12 years ever started. Yes, Your Honor. What exactly is your, is your claim with respect to Arrow, Arrow Creek? Are, are you claiming all the land that was formally under Arrow Creek? Yes, with the exception of that which is nearest to Lot 16. It is what is, it is now a relicted, a dry streambed, and whether it is navigable or not, the practical effect is that the landowners on each side own to the extent that it was formerly the, the river or the stream, and in the, and except for Lot 16, that is the Hines. On both sides? On both sides. All right. And I think I'm over my time. We'll still give you a minute for rebuttal. Thank you, Your Honor. Good morning. Erica Kranz for the United States. So plaintiffs are seeking a quiet title against the United States. To do that, they first have the burden of establishing that they fall within the limited waiver of sovereign immunity established by the Quiet Title Act, and they ultimately also would have the burden of establishing title in themselves. Now, the district court correctly ruled that it lacked jurisdiction because their claims were barred by the 12-year statute of limitations. The United States long ago claimed the lands that the, that the plaintiff is now claiming, and to the that they are claiming title to that did not fall within the United States claim. This court also lacks jurisdiction because the complaint doesn't satisfy another condition of that limited waiver of sovereign immunity, and, and that's the condition that the complaint plead with sufficient particular, particularity, the interest that they're claiming, the circumstances under which they took that interest, and the adverse interest of the United States. I need some help on this case, Quiet Title Act case, about when this 12-year statute of limitations accrued in Schultz versus Department of the Army. In that case, there are a bunch of homesteads, the Army wasn't even there. The Army put a military base over a large area that had homesteads, and an area, some groups of homesteads that were needed access, so they were driving down a road through the military base. The question was whether, because it had been there since World War II, a landowner who sued in the 80s was barred by the 12-year statute of limitations from using the Quiet Title Act to quiet title to an easement over the road through the gate and generally unattended guard post alone was insufficient to put a reasonable landowner on notice of a claim. We hold that the earliest the cause of action accrued was when the Army began to restrict access through a pass system. And here, what I was trying to identify was when the 12-year statute started running, and I couldn't find anything that was remotely close to the United States restricting the plaintiff's use of the accrued accreted lands. So it's not a question to me of when it expired, it's a matter of when it started running. Until the U.S. does something, it doesn't start. The statute doesn't mean you have to sue as soon as you're worried. It means you have to sue when somebody interferes with your rights to your land. Well, Your Honor, it strikes me that this case is much more similar to Fidelity Exploration. That was mineral rights. I don't understand that. There, what matters is who owns the riverbed. That was a claim to the riverbed. It was a mining company seeking quite title to the riverbed. Yeah, but a riverbed is altogether a different law. I don't think that's right, Your Honor. Has the United States ever interfered with the landowner's right to graze cattle to the high water mark? No, I don't believe so. Has it ever interfered with the ability of the riparian landowner to graze on accreted land? No, but the United States' claim here to the mid-channel, that's a congressional pronouncement that the United States owns lands up to the middle of the river. There could be nothing more clear, no claim more clear by the United States of ownership than that congressional act. Also, the lands that Plaintiff is trying to acquire a title to, they said they're not trying to acquire a title to the riverbed. Well, half their claims do try to acquire a title to lands below the high water mark. Those lands are the riverbed and fall within that claim of the United States to the mid-channel of the river. Also, the federal ownership of islands in the river, whether they existed pre-statehood or arose post-statehood, if they arose post-statehood, the federal... Well, here's a big problem. I heard Plaintiff's counsel just say that their patents say they are riparian owners. That is not accurate. The patents do not say riparian. They do not say high water mark. Instead, they reference a farm plan that we don't have in the record. We also don't have a chain of title extending from those patents to the deed that plaintiffs finally produced at summary judgment. It's not the United States' job to do a title search to establish that these plaintiffs indeed are riparian owners. That's their job. They have the burden of proof here. And this is indicative of really the entire case. They are raising a lot of questions, but even if you are satisfied that there is jurisdiction here, that they have both fallen within the statute of limitations and pled their claims with record that would allow the court to quiet title in these plaintiffs. They don't have... When did the United States assert a claim to the accreted land or to the relicted land of Arrow Creek? They asserted title to all land south, undisposed of land south of the mid-channel of the Yellowstone River no later than 1958. And that would include the riverbed, islands, accretions to those islands, and any other accretions to federal or disputed lands. And here, again, they have not established that they are riparian landowners. Why would that assertion even matter under Schultz? I mean, in Schultz, surely the United States asserted a right to build a road across land that these homesteaders thought that they were entitled to. But since it didn't bar the use by the homesteaders, we held that the Quiet Title Act statute of limitations never began running. Well, in Michel v. United States, this court's case from 1995, this court held that a plaintiff doesn't have to know the full contours of the United States claim. They just have to understand that it would create a cloud on their title. Well, clouds are just what you use Quiet Title Act claims for. I suppose the most common use that I've ever seen of them is when there's some sloppy drafting of deeds in the chain of title so that before exploiting the land fully, the landowner has to clear the clouds off. And there's no statute of limitations because no one has done anything that was an open and notorious interference with use. The statute never begins running. How do we swear that with fidelity, though, where this court said that Because it's mineral claims. I'm sorry? It's mineral claims, whole different deal. No, those were a claim. That was a claim to the bed of the river. The riverbed, which, as Judge Kleinfeld said, is a totally different animal. It's a totally different animal. Okay, let me try this another way. Today I heard plaintiffs say nothing about these claims below the ordinary high water mark. It seems that they're abandoning the argument that they didn't have notice of that, at least, because those are riverbed claims. So those are all the even claims. If we're talking just about accretions, it's plain from this record that the majority of what they are claiming as accretions are, in fact, former islands that were federally owned and on their theory that they arose post-statehood and are then state-owned, again, accepting all of their arguments as true. They're still not their lands. Perhaps if they are riparian and if some land accreted to those riparian, some new land accreted to those riparian lands, they could take title to some of that, perhaps. But we don't have anything in the record that would allow them to establish that at trial. Are you saying that you're entitled to prevail in such a way that on accreted lands, the rancher would no longer be able to use them to water his cattle or whatever else you might want to do? Not to the extent that those accreted lands... He used to be a riparian owner and now he's not anymore. That is the law in Montana. That is what you're claiming. Well, it's not... Adjoined islands are not accreted lands. They are treated completely differently under the law. What about the area that's not islands? Are you claiming that the landowner no longer owns the accretions? We are claiming that they... That would be so if the United States had adversely possessed them. Say the U.S. had put a restricted park on the accreted lands and said, you can't graze your cattle there anymore. At that point, I can see where you'd have to sue within 12 years. But I think you're saying now that, no, at this point, the accreted lands are the United States lands. They're no longer the riparian owner's lands. I'm not asking you now to tell me why your argument is right. I'm asking you, is that your position? Well, I'm really talking at this point less about the statute of limitation and more just about the merits of this case, because this went off at the summary judgment phase. The record has been as developed as it's going to be. So what's in front of you is... Well, hold on. I must not have made myself clear. I want to know if the United States position is that it owns the accreted lands, islands or not. The United States position is certainly that it owns the islands and any accretion to those islands. Now, we do not... What about accretion to... Accretion to the... The river bank where there were not islands. Is it the U.S. position that it owns that land or not? I think that's an unknown. You don't know... I don't... Unknown by who? The United States doesn't know what its position is? No. That would require, well, first, establishment of riparian title by the plaintiffs, and then you would need experts to go out and... Well, that's what you use Acquired Title Act Action 4, is to acquire title. That's right, but... Is your point that discovery already happened and they didn't show... They didn't have experts and they didn't have detailed maps? Is that your point? That's right. So, that's right. For them to prevail in this action with the burden of proof, they would have to establish the extent of those accretions that went to their land, if they are riparian landowners, as opposed to the federally owned islands, and they have put forth absolutely no evidence that would allow the court to even answer that question. They have presented no expert testimony at all. They have also no knowledgeable fact witness. Well, that would be so if you went to trial. They certainly would have burden of proof at trial, I suppose. Well... But this is going off on statute of limitations. Usually, if you want to build, say, an office building, and there was some sloppy drafting in some of the deeds 100 years ago or 50 years ago or whatever, you bring a quiet title action against the world and you assert a prima facie case in the complaint for why you own the land that you want to build the office building on, give notice to the world, personal notice wherever it's possible, publication or something where it's not, and then the whole world can respond and say, no, you don't own that, we do. And burden of proof really doesn't come into it at that point. Well... And if there's a motion to dismiss that action because someone says they made a claim that accrued some number of years ago and that land's become adversely possessed by them, say they built a driveway over part of the land that is going to be the office building many years ago, then the burden of proof and the statute of limitations come up. Well, the burden of proof is really important here because although the district court ruled... They need to survive a motion for summary judgment. That's where we were in the proceedings. Okay. They need a prima facie case and they need to show that there's some factual basis for claiming that land. That's right. And they have not established any issue of genuine issue of material fact that allows them to survive the United States motion for summary judgment and go to trial. What's this trial going to be about? So you're saying they did not put on a prima facie case, they did not provide evidence of a prima facie case... That they owned the land, that they were in fact riparian owners? That they were in fact riparian owners. No case whatsoever about what extent of accretions they are entitled to. They didn't put in their patents or deeds? We have patents that just reference lots in a farm unit plan and so we have the original patents and then we have their deed and nothing in between. They also... If you look at... I think this is really instructive, the Armstrong case that's cited in our brief is very helpful walking through background principles of Montana law about accretion and island formation and adjoinder. But it also talks about the type of evidence that you would expect to see in this kind of case to establish, you know, if you have accretions to mainland and accretions to an island, trying to establish where that line is to establish a property boundary. In that case, there was testimony from a sedimentologist and on the other side, testimony from a geologist with a specialty in fluvial geomorphology. These are the type of experts that could look at the grounds... You're just talking custom here now or other cases you're aware of. You're not talking about the law. Who has to provide what when? There is a general principle that riparian owners can take title to accretions to their property. So what you're saying is they haven't shown that they're riparian owners. They haven't shown them they're riparian owners. And after discovery, they have not put forth any evidence about where that line is between their allegedly riparian lots and the former islands that have become adjoined to them. And without any of that evidence, they as the party with the burden of proof cannot survive a motion for summary judgment. That's the basic summary judgment standard in the Celotex case is a lack of evidence. The moving party who does not have the burden of proof can simply point to a lack of evidence and win a motion for summary judgment. What about the relicted land in Arrow Creek? I'm glad you asked because I heard counsel say this morning that Arrow Creek is totally dry and fully relicted. He can say that, but that's not in the record. The record suggests that there is still water moving in that channel and that we don't know if in a high water event, for instance, water still flows at a great volume through it. So, again, simply a statement of counsel is not enough to create a genuine issue of material fact. Thank you, counsel. I don't remember how much. I think we had you past your time, so I'll give you a minute for rebuttal. Thank you, Your Honor, and I'll try to be quick. To the summary judgment issues that she's raised beyond the statute of limitations, in their brief before the magistrate and the district court, what the United States said was is that it was a discovery issue that the Hines had not produced the full documents for the change of the record, to which we responded, they're public records. But isn't it your burden to show the chain of title? At trial, it is, yes. But how do you survive summary judgment if they're raising that you don't have evidence and you haven't shown the evidence? They didn't raise that we don't have the evidence. They just raised that we didn't provide it as per our discovery obligations, which I believe. What do we have here to show that your side of the case, those clients are riparian owners? The original patents and their deed, Your Honor. Did they make the river the boundary? No. And as to the. . . And is there anything in the record you can point us to that shows that the creek is totally dry all the time? Yes, there was. . . I believe we cited it in our brief to the district court. Their expert testified that it was reelected. Can you point us to where that is? I don't have that with me right here. I'd have to go back through the record, Your Honor. And as to the issue of drawing a line and saying where the two lands meet, it's our position that the United States does not own those islands, and that to draw a line as to where our property ends and theirs begins, there isn't a line where their property begins. It belongs to the State of Montana. And that fight is a different fight. How do we know that the plaintiffs are riparian owners if we don't have a prima facie case that shows that they are? Your Honor, I believe that there is a prima facie case, and I don't believe that anybody ever raised the issue at summary judgment that there wasn't. They raised it as a discovery issue, that we should have provided these documents, but we didn't. They didn't deny that we owned it. Isn't that just semantic? You need to show evidence? Well, we do need to show evidence, but whether we need to produce a public copy of a public document through initial disclosure is a little different. I'm trying to understand this. Suppose I file a quiet title action in the State of Washington on the land where the Fairmont Hotel is. Yes. Surely if there's a motion for summary judgment, I have to show some prima facie case that I own the land where the Fairmont Hotel is. Yes, and we sure we did provide the deeds that show that we own it. But the way it was styled in their motion for summary judgment was not that we did not own the land or that it wasn't riparian land. It was simply that we failed in a discovery obligation, to which our response was these are public documents. And the public documents make it riparian. Yes. But we don't have those in the record. They're not in the record because there wasn't a denial of our ownership. Okay. Both sides are out of time. Thank you, counsel, for the helpful arguments. We are adjourned for the day and for the week. Thank you. All rise.
judges: Kleinfeld, Friedland, Pauleyiii